[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Horizon Science Academy of Lorain, Inc. v. Ohio Dept. of Edn.*, Slip Opinion No. 2021-Ohio-1681.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1681

THE STATE EX REL. HORIZON SCIENCE ACADEMY OF LORAIN, INC. ET AL. *v.*

OHIO DEPARTMENT OF EDUCATION ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Horizon Science Academy of Lorain, Inc. v. Ohio Dept. of Edn.*, Slip Opinion No. 2021-Ohio-1681.]**

*Mandamus—Grant funding for community schools under the Quality Community School Support ("QCSS") Program—Section 265.335 of H.B. 166—Definition of "in good standing" for community-school operators under the QCSS Program relates to operator's effectiveness, not corporate registration with the secretary of state—Writ granted as to Ohio Department of Education.*

(No. 2020-0749—Submitted March 2, 2021—Decided May 19, 2021.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In the 2020–2021 biennial budget bill, 2019 Am.Sub.H.B. No. 166 ("H.B. 166"), the General Assembly appropriated $30 million for a Quality Community School Support ("QCSS") Program. Under the program, a community school that has met certain criteria would receive grant funding for the 2020–2021 and 2021–2022 fiscal years. H.B. 166, Section 265.335.

{¶ 2} Relators are 12 Horizon Science Academy community schools (collectively, "the HSA schools")[1] that had applied for QCSS grants. The Ohio Department of Education ("ODE") denied the applications because the schools' operator was a foreign corporation not licensed with the Ohio secretary of state and was therefore, according to ODE, not "in good standing" as required by Section 265.335 of H.B. 166. The HSA schools seek a writ of mandamus ordering respondents, ODE; its director of community schools, Karl J. Koenig; the Ohio State Board of Education; and Ohio Superintendent of Public Instruction Paolo DeMaria, to approve their applications and pay them the amounts due under H.B. 166. Because ODE's interpretation of "in good standing" is incorrect, we grant the writ as to ODE. We deny the writ as to the remaining respondents because Section 265.335 of H.B. 166 does not impose duties upon them to perform the requested acts.

## I. Factual and Procedural Background

### A. The HSA schools

{¶ 3} The HSA schools are community schools organized under R.C. Chapter 3314. "[C]ommunity schools are independently governed public schools that are funded from state revenues pursuant to R.C. Chapter 3314." *See State ex*

---

1. The 12 schools are Horizon Science Academy of Lorain, Inc.; Horizon Science Academy Youngstown, Inc.; Horizon Science Academy Cincinnati High School, Inc.; Horizon Educational Services, Inc.; Horizon Science Academy–Cleveland Middle School; Horizon Science Academy Elementary School, Inc.; Horizon Science Academy, Inc.; Horizon Science Academy Primary; Horizon Science Academy–Dayton; Horizon Science Academy Dayton High School, Inc.; Horizon Science Academy–Springfield; and Horizon Science Academy–Toledo.

*rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 5.

{¶ 4} As authorized by R.C. 3314.01(B), each of the HSA schools contracts with an operator, Concept Schools NFP ("Concept"), for school-management services. Concept is an Illinois nonprofit corporation that has operated community schools in Ohio for more than 15 years. Concept operates 30 schools in seven states, including 17 schools in Ohio.

### B. Section 265.335 of H.B. 166

{¶ 5} Section 265.335 of H.B. 166 established the QCSS Program, which provides general-revenue funding for community schools. Under the program, a school designated by ODE as a "Community School of Quality" receives additional funding of $1,750 or $1,000 per fiscal year, per student, with the amount depending on whether the student is economically disadvantaged. H.B. 166, Section 265.335(A). ODE is required to pay the grant amounts to eligible schools no later than January 31 of each fiscal year. *Id.* A school deemed eligible for a QCSS grant for the 2020–2021 school year would also receive the grant for the 2021–2022 school year. H.B. 166, Section 265.335(C). The General Assembly appropriated $30 million for QCSS grants for the 2020 and 2021 fiscal years. H.B. 166, Section 265.10.

{¶ 6} There are four ways in which a school may qualify for a QCSS grant as an eligible Community School of Quality, which ODE refers to as Criteria 1, Criteria 2, Criteria 3(b)(i), and Criteria 3(b)(ii). Only Criteria 3(b)(i) and 3(b)(ii) evaluate a school's operator in determining eligibility. In this case, the HSA schools attempted to qualify for a QCSS grant under Criteria 3(b)(ii).

{¶ 7} Under Criteria 3(b)(ii), a school qualifies for a QCSS grant if it "contracts with an operator that operates schools in other states" and the operator meets all of the following criteria:

(I) One of the operator's schools in another state performed better than the school district in which the school is located, as determined by [ODE].

(II) At least fifty per cent of the total number of students enrolled in all of the operator's schools are economically disadvantaged, as determined by [ODE].

(III) The operator is *in good standing* in all states where it operates schools.

(IV) [ODE] has determined that the operator does not have any financial viability issues that would prevent it from effectively operating a community school in Ohio.

(Emphasis added.) H.B. 166, Section 265.335(B)(3)(b)(ii). H.B. 166 does not define "in good standing."

{¶ 8} ODE created a multipage form for schools to use when applying for a QCSS grant. The form as completed by the HSA schools in November 2019 recited the eligibility requirements stated in Section 265.335(B)(3)(b)(ii) and further provided the following five criteria that the operator had to satisfy in order "to meet the definition of good standing":

- All schools it currently manages in all states are not on probation;

- All schools it currently manages in all states are not in receipt of notices of intent to suspend operations from the schools' current sponsors/authorizers;

- All schools it currently manages in all states have not been required by their sponsors/authorizers to suspend operations;

- All schools it currently manages are not in receipt of notices of termination from their current sponsors/authorizers;

- All schools it currently manages do not have unresolved corrective action plans from the state department of education, current sponsor/authorizer, or current operator.[2]

(Footnote added.) The form also contained a section titled "Operator Assurances Supplement," which required the applicant to attest that its operator satisfied each of the five criteria for "good standing." However, the form completed by the HSA schools in 2019 did not require applicants to assure that their operator was registered as a corporate entity with the office of the Ohio secretary of state or its equivalent in other states where the operator operates schools.

### C. The HSA schools' applications for QCSS grants

{¶ 9} In November 2019, the HSA schools each applied for a QCSS grant under Criteria 3(b)(ii). Each school used the application form created by ODE and attested to its compliance with the requirements of Section 265.335(B)(3)(b)(ii)(I) to (IV). The HSA schools also attested that Concept satisfied each of the five good-standing criteria pertaining to operators.

{¶ 10} On January 10, 2020, Koenig, ODE's director of community schools, notified the HSA schools that their applications had been denied. Koenig informed the schools that they did not satisfy Section 265.335(B)(3)(b)(ii)(III) because their operator, Concept, "is not registered as a foreign corporation with the Ohio Secretary of State's Office and, therefore, is not in good standing in Ohio." Koenig did not identify any other criteria that the HSA schools failed to satisfy.

---

2. Ohio's community-school statutes define "sponsor" as an ODE-approved entity that monitors the school's performance according to state laws and regulations. *See* R.C. 3314.02(A)(1) and (C)(1), 3314.03(A)(4). In turn, ODE monitors the sponsor's performance. R.C. 3314.015(A)(2) and (3).

*D. The mandamus action*

{¶ 11} The HSA schools commenced this action on June 15, 2020, naming ODE, the Ohio State Board of Education, Koenig, DeMaria, and Governor Mike DeWine as respondents. They requested a writ of mandamus directing all respondents to (1) approve the schools' QCSS-grant applications and (2) award each school "an amount up to $1,750 for each student identified as economically disadvantaged and up to $1,000 for other students enrolled for fiscal year 2020," in accordance with the General Assembly's appropriation in H.B. 166. Respondents moved to dismiss the complaint, with a separate filing by Governor DeWine. We granted the motion to dismiss as to Governor DeWine, denied the remaining respondents' motion to dismiss, and granted an alternative writ. 160 Ohio St.3d 1414, 2020-Ohio-4612, 154 N.E.3d 87. The parties submitted evidence and briefs, and the case is now before us for a decision on the merits.

## II. Analysis

{¶ 12} To be entitled to a writ of mandamus, the HSA schools must establish by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondents to provide it, and (3) the lack of an adequate remedy in the ordinary course of law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. Respondents do not dispute that the HSA schools lack an adequate remedy in the ordinary course of law. Indeed, the schools have no avenue to appeal ODE's determination that they are ineligible for QCSS grants. *See State ex rel. Lakeview Local School Dist. Bd. of Edn. v. Trumbull Cty. Bd. of Commrs.*, 109 Ohio St.3d 200, 2006-Ohio-2183, 846 N.E.2d 847, ¶ 9 (mandamus is appropriate remedy when a school board has no right to appeal the commissioners' alleged failure to follow statutory duty to distribute funds). Thus, our decision turns on whether the HSA schools have established a clear legal right to QCSS-grant funding and whether respondents have a clear legal duty to provide it.

*A. The meaning of "in good standing" in Section 265.335 of H.B. 166*

**{¶ 13}** The crux of the legal dispute in this case is the meaning of the requirement that a community school's operator be "in good standing in all states where it operates schools" in order for the school to qualify for a QCSS grant under Criteria 3(b)(ii). *See* H.B. 166, Section 265.335(B)(3)(b)(ii). ODE denied the HSA schools' grant applications because their operator, Concept, is an Illinois nonprofit corporation that had not been licensed by the secretary of state to do business in Ohio when the schools submitted their applications. *See* R.C. 1703.27 ("No foreign nonprofit corporation shall exercise its corporate privileges in this state in a continual course of transactions until it has first procured from the secretary of state a certificate authorizing it to do so"). Concept's failure to be properly registered does not affect the validity of its school-management agreements with the HSA schools. *See* R.C. 1703.29(A). But for purposes of the schools' eligibility for QCSS-grant funding under Criteria 3(b)(ii), ODE considers the term "in good standing" to implicitly include licensure with the secretary of state.

**{¶ 14}** When construing a legislative enactment, we must discern the intent of the General Assembly. *State ex rel. Repeal the Lorain Cty. Permissive Sales Tax Commt. v. Lorain Cty. Bd. of Elections*, 151 Ohio St.3d 247, 2017-Ohio-7648, 87 N.E.3d 1234, ¶ 14. In doing so, we begin with the plain language of the statute. *Id.* In this case, however, the General Assembly did not define "in good standing" in Section 265.335 of H.B. 166. Undefined words and phrases in an enactment "shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. "[A] court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the [legislature]." *State v. Wilson*, 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (1997); *see also Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 102, 543 N.E.2d 1188 (1989) ("words and phrases in a statute must be read in context of the whole statute"). Here, an examination of the QCSS-grant-funding

criteria as a whole indicates that the "in good standing" requirement in Criteria 3(b)(ii) speaks solely to the operator's standing as a qualified and effective operator of community schools.

{¶ 15} This interpretation of "in good standing" makes sense when examined in the context of the other Criteria 3(b)(ii) requirements. The other requirements for a school to qualify for a QCSS grant under Criteria 3(b)(ii) are (1) that one of the operator's schools in another state outperformed its school district, (2) that at least 50 percent of the students enrolled in all of the operator's schools are economically disadvantaged, and (3) that the operator does not have any financial-viability problems that would interfere with its ability to operate a school in Ohio. *See* H.B. 166, Section 265.335(B)(3)(b)(ii). Each of these requirements relates to either the operator's effectiveness or the provision of educational opportunity to economically disadvantaged students. In this context, the requirement that the operator also be "in good standing in all states where it operates schools" is logically construed to relate to the operator's ability to effectively operate community schools. That is, an operator is "in good standing in all states where it operates schools" if the operator is not subject to any form of sanction, suspension, or disciplinary censure by a state's educational authority or a school's sponsor. Not surprisingly, ODE's own list of "good standing assurances," to which the HSA schools had to attest, related to these types of issues and not to any corporate-registration requirement in Ohio or any other state.

{¶ 16} An examination of the rest of Section 265.335 of H.B. 166 provides further support for the conclusion that "in good standing" does not mean compliance with a corporate-registration requirement with the Ohio secretary of state (or an equivalent requirement in other states). Under Criteria 1, a school qualifies for QCSS-grant funding if it meets certain academic performance standards as of the program's effective date and if at least 50 percent of its students are economically disadvantaged. H.B. 166, Section 265.335(B)(1). Under Criteria

2, a school qualifies for QCSS-grant funding if it is a relatively new school operating under certain timing parameters and is replicating the operational and instructional model of a Criteria 1 school. H.B. 166, Section 265.335(B)(2). And under Criteria 3(b)(i), a school qualifies for QCSS-grant funding if its operator operates schools in other states and if, as of the program's effective date, its operator operated a school that received either a grant under the federal Charter School Program (20 U.S.C. 7221) or funding from the Charter School Growth Fund.[3] H.B. 166, Section 265.335(B)(3)(b)(i).

{¶ 17} All of the requirements in Criteria 1, 2, 3(b)(i), and 3(b)(ii) relate to indicia of a school's successful performance. However, Criteria 3(b)(i) and 3(b)(ii) also focus on the school operator. Criteria 3(b)(i) does not require that the school operator be "in good standing" in all states where it operates schools, even though the General Assembly expressly contemplated that a school applying for grant funding under Criteria 3(b)(i) would have an out-of-state operator. *See* H.B. 166, Section 265.335(B)(3)(b)(i). Instead, the General Assembly considered that a school that contracts with an operator sufficiently demonstrates the operator's effectiveness if it received funding from the federal Charter School Program or the Charter School Growth Fund. We likewise interpret the school-operator requirements in Criteria 3(b)(ii) as being geared toward assurances of the operator's effectiveness.

{¶ 18} If the General Assembly had been concerned with a school operator's corporate-registration status as a prerequisite to QCSS-grant funding, it would have imposed corporate registration as a requirement for schools applying under *any* of the criteria and not just for eligibility under Criteria 3(b)(ii). It is just as likely that a community school seeking to qualify under Criteria 1, Criteria 2, or

---

3. The Charter School Growth Fund is a nationally recognized philanthropic organization that funds charter schools nationwide, https://chartergrowthfund.org/ (accessed April 13, 2021) [https://perma.cc/TNQ2-YSHS].

Criteria 3(b)(i) could have an operator that is a foreign corporation. Indeed, three other Horizon Science Academy schools *also operated by Concept* received QCSS-grant funding under Criteria 1. There is nothing in the language of Section 265.335 of H.B. 166 to suggest that the General Assembly intended to disqualify a school from a QCSS grant under Criteria 3(b)(ii) if its operator was not registered with the Ohio secretary of state yet allow a school with *the same operator* to obtain a QCSS grant under any of the other three criteria. The QCSS-grant scheme as a whole indicates that the General Assembly intended the eligibility requirements to relate to performance-based factors of the school itself (Criteria 1 and 2) or the operator (Criteria 3(b)(i) and 3(b)(ii)).

### B. ODE's interpretation is not entitled to deference

{¶ 19} In support of its interpretation of "in good standing" to include a corporate-registration requirement, ODE asks the court to apply the principle of agency deference. But deference to an administrative interpretation is not appropriate when the enactment is unambiguous. *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 29. For the reasons stated above, the phrase "in good standing" as used in Section 265.335 of H.B. 166 is unambiguous. Based on a reading of the legislative enactment as a whole, the term has nothing to do with corporate registration. Therefore, ODE is not entitled to agency deference in this case.

### C. Mandamus is appropriate only as to ODE

{¶ 20} For the reasons set forth above, corporate registration is not a prerequisite to qualify for grant funding under Criteria 3(b)(ii) of the QCSS Program. Because the HSA schools have met the Criteria 3(b)(ii) requirements, they have established a clear legal right to QCSS grants and a clear legal duty on the part of ODE to provide them. The HSA schools are therefore entitled to a writ of mandamus ordering ODE to approve their grant applications and award them

QCSS-grant funding. The schools are not, however, entitled to a writ of mandamus as to respondents Koenig, DeMaria, or the Ohio State Board of Education.

{¶ 21} Section 265.335 of H.B. 166 imposes no duties on either DeMaria or the Ohio State Board of Education to approve grant applications or disburse grant funds. And though Koenig is the ODE director of community schools, H.B. 166 imposes the duty of administering the QCSS Program and disbursing the grant funds on ODE, not on any particular individual or officer. *See* H.B. 166, Section 265.335(A). Moreover, the evidence shows that ODE's decisions on whether a school qualifies for a QCSS grant and whether to approve a disbursement of QCSS funds to a school are not relegated solely to Koenig. We will not issue a writ of mandamus against a respondent who has no duty to perform the requested acts. *See State ex rel. Becker v. Eastlake*, 93 Ohio St.3d 502, 506, 756 N.E.2d 1228 (2001).

### III. Conclusion

{¶ 22} The HSA schools satisfied all of the requirements to obtain QCSS-grant funding under Section 265.335(B)(3)(b)(ii) of H.B. 166. We therefore grant a writ of mandamus requiring ODE to approve the HSA schools' QCSS applications and award them grant funding as set forth in Section 265.335 of H.B. 166. We deny the writ as to the remaining respondents.

Writ granted in part

and denied in part.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, and STEWART, JJ., concur.

DONNELLY and BRUNNER, JJ., dissent and would deny the writ as to all respondents.

_____

Nicola, Gudbranson & Cooper, L.L.C., Nicholas J. Dertouzos, and Arthur L. Clements III, for relators.

Organ Law, L.L.P., Erik J. Clark, and Gabriel Siegle, for respondents.

_____