[Cite as *Slayton v. Peterson*, 2024-Ohio-863.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

Amanda Slayton                                    Court of Appeals No.  S-23-014

    Appellee                                      Trial Court No.  22 DR 301

v.

Nathan Peterson                                   **<u>DECISION AND JUDGMENT</u>**

    Appellant                                     Decided:  March 8, 2024

* * * * *

Karin L. Coble, Joseph F. Albrechta, Christopher E. Liebold
and Joseph A. Urenovitch, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Nathan Peterson, appeals the April 13, 2023 judgment of the Sandusky County Court of Common Pleas, Domestic Relations Division, overruling his objections to the magistrate's decision and confirming registration of a foreign parenting order, as requested by appellee, Amanda Slayton.  For the following reasons, we affirm.

## I. Background and Facts

{¶ 2} In 2016, Peterson and Slayton were divorced in North Carolina, where they lived at the time.  The divorce decree included custody orders for their children that gave them joint legal custody and "equal physical custody and control of * * *" the children. In 2018, Slayton sought to modify the 2016 custody order.  At that point, she lived in

Ohio (and Peterson remained in North Carolina), so equal division of parenting time was not possible. In September 2020, the General Court of Justice, District Court Division, of Onslow County, North Carolina, issued an order modifying the 2016 order (the "North Carolina decree"). The North Carolina decree gave Slayton primary physical and legal custody of the children and Peterson secondary physical and legal custody with visitation as outlined in the order.

{¶ 3} In early 2020, Peterson moved to Missouri, where he currently resides. When the children were attending school virtually due to COVID-19 shutdowns, Peterson and Slayton agreed that the children should spend half of their time with each parent. They followed the equal-time schedule that they agreed on (instead of the visitation schedule in the North Carolina decree) until December 2021. In December 2021, Peterson refused to return the children to Slayton because one of the children alleged that he was sexually abused by a cousin while in Slayton's custody in Ohio.

{¶ 4} Peterson reported the abuse allegations in Missouri. As a result, two cases (the "abuse cases") were filed in the Family Court of Cole County, Missouri, Juvenile Division ("Missouri juvenile court"). Peterson did not provide the trial court with much information from the abuse cases; the record contains only some minimal testimony from the parties and judgment entries signed January 5 and May 4, 2022.[1]

---

[1] None of the many copies of the abuse-case orders that are in the record contains a file stamp; the only dates on the orders are the dates they were signed.

2.

**{¶ 5}** In the January entries, the Missouri juvenile court noted that Peterson admitted the allegations in the petitions, made factual findings, assumed jurisdiction over the children pursuant to Mo.Rev.Stat. 211.031.1(1),[2] and set the matter for a contested adjudication hearing as to Slayton. Most relevant to this appeal, the entries made the children "ward[s] of the Court," granted Peterson custody of the children under the supervision of the "Children's Division,"[3] and ordered that the children stay in Missouri "pending final disposition of * * *" the abuse cases.

**{¶ 6}** The May entries are much shorter. Aside from some boilerplate, the orders state, in their entirety, "Cause dismissed as to the allegations against mother. Jurisdiction terminated as to father."

**{¶ 7}** While the abuse cases were pending, Peterson and Slayton each filed an additional court case. First, in December 2021 (around the same time he reported the abuse allegations), Peterson filed a custody case in the Circuit Court of Cole County, Missouri (the "custody case"). Again, not much information from that case is in the record, but we know that Peterson filed a motion to modify custody, and the custody case

---

[2] This is Missouri's statutory grant of jurisdiction to juvenile courts in cases where a "child is in need of care and treatment because the child is without proper care, custody, or support[,]" *Interest of T.D.*, 645 S.W.3d 669, 676 (Mo.App.2022), and is essentially equivalent to a juvenile court in Ohio having jurisdiction over abuse, neglect, and dependency cases. *See* R.C. 2151.23(A)(1).

[3] A children's division is the Missouri equivalent of a children services agency in Ohio. *See* Mo.Rev.Stat. 210.109; R.C. 5153.16.

3.

was pending when the magistrate and trial court in this case issued their decisions on registering the North Carolina decree in Ohio.[4]

{¶ 8} Second, in April 2022, Slayton filed the R.C. 3127.35 petition to register a foreign parenting order underlying this appeal. In her petition, Slayton asked to register the parties' 2016 divorce decree and the North Carolina decree, and alleged that the North Carolina decree had not been modified.

{¶ 9} Peterson objected to Slayton's petition. In his initial response, Peterson argued that Slayton should not be allowed to register the North Carolina decree, and her petition should be dismissed, because the trial court did not have jurisdiction to modify the North Carolina decree. Later, in a separate motion to dismiss—filed in June 2022, after the Missouri juvenile court dismissed the abuse cases—Peterson objected to Slayton registering the North Carolina decree under R.C. 3127.35(D)(2) because the abuse-case orders "effectively stayed" the North Carolina decree.

{¶ 10} In July 2022, the trial court magistrate held a hearing on Peterson's objection to Slayton's petition. The magistrate specifically limited the hearing to the issue of whether one of the objections in R.C. 3127.35(D) applied. That is, the magistrate

---

[4] In November 2023, while this appeal was pending, Slayton (who did not file a brief or otherwise participate in this appeal) filed two orders from the custody case in the trial court. The first, signed in July 2023, was a determination by the Missouri court that it did not have jurisdiction to modify the North Carolina decree. The second, signed in October 2023, dismissed the custody case for lack of jurisdiction. These document are not properly before us. *Salpietro v. Salpietro*, 2023-Ohio-169, 205 N.E.3d 1203, ¶ 9-10 (6th Dist.) (appellate review is limited to the record made in the trial court as it existed when the trial court issued its judgment).

4.

made clear that the hearing was focused only on whether Slayton could register the North Carolina decree, not whether the court could enforce or modify it.

{¶ 11} At the hearing, as relevant to the issue of registration, Slayton testified to her belief that, following the Missouri juvenile court dismissing the abuse cases in May 2022, the North Carolina decree had not been modified and controlled custody arrangements for the children.

{¶ 12} Peterson testified that he had registered the North Carolina decree in Missouri in December 2021, and his motion to modify in the Missouri custody case was pending. At the time of the January 2022 hearing in the abuse cases, the Missouri juvenile court placed the children with him. After the Missouri juvenile court dismissed the abuse cases in May 2022, Peterson thought that the North Carolina decree was the only existing custody arrangement, but he believed that it was "unenforceable," essentially because he understood that a North Carolina court could not enforce a custody order against nonresidents. When the magistrate asked Peterson what custody order he thought was in effect or what order he was following, he said that he and Slayton "are attempting to follow the North Carolina order as close as [they] physically can * * *."

{¶ 13} In her January 2023 decision, the magistrate found that the trial court should confirm registration of the North Carolina decree. In reaching that decision, the magistrate rejected Peterson's argument that the trial court could not register the North Carolina decree if it was also registered in Missouri. She also explained that neither party had provided the court with "an order from Missouri that currently vacates, stays or

5.

modifies the North Carolina Custody Order[,]" and "Missouri's temporary exercise of emergency jurisdiction [and] temporary modification of * * *" the North Carolina decree did not prevent the trial court from registering the North Carolina decree. The magistrate reasoned that "the custody orders reverted back to the order from North Carolina * * *" when the Missouri juvenile court dismissed the abuse cases and terminated jurisdiction, and "[t]o argue otherwise would be illogical as it would place the parties in the situation of having no current order to govern custody of the children."

{¶ 14} Peterson objected to the magistrate's decision. As relevant to the issue he raises on appeal, he argued that the magistrate's decision was contrary to the plain language of R.C. 3127.35(D)(2) because the Missouri juvenile court's January 2022 orders in the abuse cases stayed and modified the North Carolina decree at the time Slayton filed her petition to register. He also argued that "has been vacated, stayed, or modified" in the statute "is past tense and therefore encompasses any vacation, stay, or modification which has happened in the past[,]" the legislature "knew the difference between the past and present tense[,]" and if the legislature intended to limit the statute to only current stays, it could have used a "grammatical structure to indicate present tense." Finally, to refute the magistrate's contention that Peterson's interpretation of R.C. 3127.35 was "illogical" and left the parties "in the situation of having no current order to govern custody of the children[,]" Peterson argued that the Missouri custody case was ongoing, and "[b]oth parties still have every opportunity to seek redress in Missouri * * *."

6.

**{¶ 15}** On April 13, 2023, the trial court overruled Peterson's objections and adopted the magistrate's decision to confirm registration of the North Carolina decree. The court noted that the magistrate's decision "contains specific detailed findings of fact and a comprehensive review of the applicable law[,]" and "clearly articulates [the magistrate's] reasoning in applying the facts of this case to the statute." The court concluded that its independent review of the matter showed that the magistrate "made an appropriate decision based upon the evidence presented at hearing."

**{¶ 16}** Peterson now appeals, raising one assignment of error:

The trial court violated the UCCJEA when it granted appellee's motion to register a foreign judgment from North Carolina when appellee had only recently registered the North Carolina foreign judgment in Missouri and proceedings are still pending in Missouri.

### II. Law and Analysis

**{¶ 17}** Relevant to the issue of registering the North Carolina decree under R.C. 3127.35, Peterson argues in his sole assignment of error that he sufficiently demonstrated an exception to registration in R.C. 3127.35(D), so the trial court erred by confirming registration of the North Carolina decree. Specifically, he argues that the Missouri juvenile court issued emergency temporary orders that modified the North Carolina decree, and that modification precludes registration under R.C. 3127.35(D)(2). Although he acknowledges that the Missouri juvenile court dismissed the abuse cases and terminated its jurisdiction, he maintains that Slayton cannot register the North Carolina

7.

decree in Ohio because it "'has been' modified" by the Missouri juvenile court orders. In other words, he contends that nothing in R.C. 3127.35 "say[s] that the foreign order must currently be under a modification * * *" and the legislature could have "include[d] in the exception only those instances where modifications made by another state were currently in effect * * *" if it had intended to preclude registration only of currently-modified orders.

### A. Standard of review

{¶ 18} The sole issue in this case is whether the trial court properly confirmed registration of the North Carolina decree. Although the parties lived in North Carolina when they divorced, and Peterson lived there in 2018 when Slayton sought to modify the custody arrangements in their 2016 divorce decree, Slayton now lives in Ohio, and Peterson now lives in Missouri. Because the custody battle underlying this case involves parents who live in different states, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), R.C. Chapter 3127, controls the enforcement and modification of the North Carolina decree. R.C. 3127.01(A) (the UCCJEA is "the act addressing interstate recognition and enforcement of child custody orders * * *").

{¶ 19} Generally, we review a trial court's decision on objections to a magistrate's decision only for an abuse of discretion. *Baker v. R/A Cab Co.*, 6th Dist. Lucas No. L-19-1031, 2019-Ohio-4375, ¶ 10. However, when the issue on appeal is solely a matter of law, we review the trial court's decision de novo. *Lucas v. Ford Motor Co.*, 2018-Ohio-3765, 109 N.E.3d 1287, ¶ 16 (9th Dist.); *see also Slak v. Strozier*, 2024-Ohio-286, ---

8.

N.E.3d ----, ¶ 19 (6th Dist.). Here, Peterson disputes the trial court's interpretation of R.C. 3127.35(D)(2). The meaning of a statute is a question of law that we review de novo. *Piazza v. Cuyahoga Cty.*, 157 Ohio St.3d 497, 2019-Ohio-2499, 138 N.E.3d 1108, ¶ 16.

## B. To preclude registration of the North Carolina decree under R.C. 3127.35(D)(2), Peterson was required to establish that a past change affected its validity.

{¶ 20} Our analysis focuses on the only issue that is properly before us: whether the trial court correctly confirmed Slayton's registration of the North Carolina decree.

{¶ 21} In Ohio, anyone can register a child custody determination that was issued by an out-of-state court, "with or without a simultaneous request for enforcement, * * *" by providing a clerk of courts with specified documents, information, and fees. R.C. 3127.35. If the person seeking registration provides the required information, the clerk must (1) file the out-of-state custody order as a foreign judgment and (2) send notice to anyone the filer named as having parental rights and give them an opportunity to contest the registration. R.C. 3127.35(B).

{¶ 22} To contest registration, the opposing party must request a hearing within 30 days, and "[a]t that hearing, the court *shall* confirm the registered order *unless* the person contesting registration establishes one of * * *" three specific circumstances: (1) the court that issued the out-of-state custody order did not have jurisdiction, as defined by R.C. 3127.15 to 3127.24 or similar statutes of another state; (2) the custody order "has been vacated, stayed, or modified * * *" by a court with jurisdiction; or (3) the opposing party was entitled to, but did not receive, notice of the custody proceedings underlying

9.

the out-of-state custody order. (Emphasis added.) R.C. 3127.35(D). The terms of section (D) are mandatory; the court is *required* to confirm the registration of the out-of-state custody order *unless* the opponent meets their burden of establishing that one of the exceptions in (D)(1) through (3) exists. *Patton v. Patton*, 2d Dist. Montgomery No. 25346, 2012-Ohio-5798, ¶ 14 ("The language of R.C. 3127.35 requires the trial court to confirm the registered order if certain filing requirements are satisfied as to the registration of the foreign decree and if a person opposing registration does not establish one of the statutory bases for contesting such registration.").

{¶ 23} In this case, Peterson does not argue that the North Carolina court lacked jurisdiction to issue the North Carolina decree or that he did not receive appropriate notice of the North Carolina proceedings. Thus, the only way he could prevent Slayton from registering the North Carolina decree was by showing that the North Carolina decree "has been vacated, stayed, or modified by a court having jurisdiction * * *." R.C. 3127.35(D)(2).

{¶ 24} Peterson argues (without providing much support) that (1) the January 2022 orders in the abuse cases "modified" the North Carolina decree; (2) "this situation fits precisely the meaning of the phrase 'has been' modified, vacated, or stayed[;]" and (3) it is irrelevant that the May 2022 orders in the abuse cases dismissed the cases and terminated the Missouri juvenile court's jurisdiction. The evidence he points to in support of this argument consists solely of the Missouri juvenile court's January 2022 orders, which granted him custody of the children—a decision that the Missouri juvenile

court did not specifically address in the May 2022 orders dismissing the abuse cases and terminating the court's jurisdiction.

{¶ 25} Our job when construing any statute is to determine the legislature's intent. *State ex rel. Horizon Science Academy of Lorain, Inc. v. Ohio Dept. of Edn.*, 164 Ohio St.3d 387, 2021-Ohio-1681, 172 N.E.3d 1019, ¶ 14. To do so, we first look to the plain language of the statute. *Id.* Undefined words in a statute "shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42; *Horizon* at ¶ 14.

{¶ 26} In R.C. 3127.35(D)(2), the legislature determined that an out-of-state custody order cannot be registered in Ohio if the person who is "seeking to contest the validity of * * *" the out-of-state custody order "establishes" that the order "has been * * * modified * * *." The UCCJEA does not define "validity" or "modified," so we look to their ordinary meanings and read them in context using the rules of grammar. *Horizon* at ¶ 14. "Validity" means "the quality or state of being valid: such as * * * the state of being acceptable according to the law[,]" *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/validity (accessed Mar. 5, 2024), and "valid" means "having legal efficacy or force[.]" *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/valid (accessed Mar. 5, 2024). "Modify" means "[t]o make somewhat different; to make small changes to (something) by way of improvement, suitability, or effectiveness * * *." *Black's Law Dictionary* 1157 (10th Ed.2014).

11.

**{¶ 27}** The registration statute uses the verb "has been," which is in the present-perfect tense.  *See* Garner, *The Chicago Guide to Grammar, Usage, and Punctuation, Section 176,* 97 (2016).  ("The present-perfect tense is formed by using *have* or *has* with the principal verb's past participle[, e.g.,] {have walked} {has drunk}." (Emphasis sic.)).  A present-perfect verb "denotes an act, state, or condition that is now completed or continues up to the present." *Id.*  That is, it "refers to (1) a time in the indefinite past * * * or (2) a past action that comes up to and touches the present * * *." *Id.*  Further, the statute talks about an order that has been modified in the context of how a "person seeking to contest the *validity* of a registered order * * *" can show that the order should not be registered in Ohio.  (Emphasis added.)  R.C. 3127.35(D).

**{¶ 28}** Putting it all together, reading the phrase "has been * * * modified * * *" in the context of methods someone can use to contest the "validity" of an out-of-state custody order shows that an out-of-state custody order cannot be registered in Ohio if (1) the order was made different or changed, (2) either at some indefinite time in the past or at some time in the past that continues to the present, and (3) the difference or change means that the order is no longer acceptable under the law or no longer has legal force and effect.  Thus, to prevent Slayton from registering the North Carolina decree, Peterson was required to show that the North Carolina decree was changed at some point and— critically—that the change rendered the North Carolina decree legally unacceptable or without any legal force.

12.

### C. Peterson failed to establish an exception to registration.

{¶ 29} Turning to the facts of this case, on the surface, our reading of "has been modified" seems to resolve the validity issue: the January 2022 Missouri abuse-case orders made temporary changes to an otherwise valid custody order in the North Carolina decree, but the Missouri orders are no longer in effect, so they have no impact on the legal force and effect of the North Carolina decree. This conclusion is underscored by Missouri law, which specifically addresses when and how juvenile court custody orders take precedence over other custody orders and—importantly—what happens when a juvenile court order is no longer in effect. *See* Mo.Rev.Stat. 211.093.2. Under that law, there is no question of the North Carolina decree's validity for purposes of R.C. 3127.35.

{¶ 30} In Missouri, a juvenile court has the authority to issue UCCJEA custody orders in cases where it has jurisdiction over children because they are "in need of care and treatment," as provided in Mo.Rev.Stat. 211.031.1(1) (i.e., abuse and neglect cases). Mo.Rev.Stat. 211.093.2.[5] *See also* Mo.R.Juv.P. 124.11 ("[A] court exercising jurisdiction over a child under [Mo.Rev.Stat.] 211.031.1(1) * * * may enter an order regarding custody * * *."). The statute provides that a juvenile court's custody order in an abuse case "shall take precedence over and shall automatically stay any prior orders

---

[5] The current version of Mo.Rev.Stat. 211.093, which first enacted provisions specific to abuse and neglect cases under Mo.Rev.Stat. 211.031.1(1), has only been in effect since August 2018. We were unable to find any Missouri case law discussing the impact of the amendments or discussing the statute's interplay with the UCCJEA provisions in Mo.Rev.Stat. Chapter 452.

13.

concerning custody * * *" and "shall remain in full force and effect after the termination of juvenile court proceedings unless the court's order specifically states otherwise." Mo.Rev.Stat. 211.093.3.  But,

> [i]f the juvenile court terminates jurisdiction without entering a continuing
> custody * * * order under [Mo.Rev.Stat. 211.093.2 and 211.093.3], *legal*
> *and physical custody of the child shall be returned to the * * * parent * * ** 
> *who exercised custody prior to the juvenile court assuming jurisdiction * ** 
> **, and any custody or visitation orders in effect at the time the juvenile*
> *court assumed jurisdiction shall be restored.*

(Emphasis added.)  Mo.Rev.Stat. 211.093.4.

{¶ 31} Based on the very limited information that Peterson provided the trial court about the abuse cases, the scenario outlined in Mo.Rev.Stat. 211.093.4 seems to apply. Although the Missouri juvenile court granted Peterson custody of the children and ordered that they remain in Missouri while the abuse cases were pending, it later dismissed the cases against Slayton and terminated its jurisdiction as to Peterson without entering a custody order intended to be ongoing.  In that case, by law, the North Carolina decree was restored and the parties were once again bound by its terms.

{¶ 32} Moreover, Slayton testified that she understood, after attending the hearing at which the Missouri juvenile court dismissed the abuse cases, that the parties were to go back to following the North Carolina decree.  Peterson did not contradict Slayton's testimony, except to discuss his understanding that *North Carolina* could not enforce the

North Carolina decree because neither party lived in the state. Although Peterson did not admit that the North Carolina decree controlled the parties' custody arrangements, he conceded that he and Slayton were "attempting to follow the North Carolina order as close as [they] physically can * * *." To be sure, this is not definitive proof that the North Carolina decree is the order currently governing the parties' custody arrangements, but it certainly weakens Peterson's claim that the North Carolina decree has been modified.

{¶ 33} Under R.C. 3127.35(D)(2), Peterson had the burden of "establish[ing]" that the validity of the North Carolina decree was in question because it "has been * * * modified * * *." Based on the information in the record and the applicable statutes in Ohio and Missouri, he has not met this burden. Although the Missouri juvenile court clearly "modified" the North Carolina decree while it had jurisdiction over the abuse cases, under Missouri law, the North Carolina decree was restored when the Missouri juvenile court terminated its jurisdiction. Peterson did not point to any law, or present any evidence, to the contrary. Because he failed to establish an exception to registration, the trial court was required to confirm the registration of the North Carolina decree. R.C. 3127.35(D); *Patton*, 2d Dist. Montgomery No. 25346, 2012-Ohio-5798, at ¶ 14. Whether the trial court can now *modify* the North Carolina decree is a separate issue that has not yet been decided by the trial court and is not before us in this appeal. *See Hays v. Kaelin*, 2d Dist. Montgomery No. 26179, 2014-Ohio-3357, ¶ 15 ("[T]he procedure for modifying

15.

foreign custody orders is separate and distinct from the registration process set forth in R.C. 3127.35.").

{¶ 34} Overall, Peterson fails to recognize the distinction between registration and modification under the UCCJEA. He spends the bulk of his brief arguing that the trial court does not have subject-matter jurisdiction to *modify* the North Carolina decree, and, by extension, Slayton should not be allowed to *register* that decree in Ohio. But a registrant's end-goal is not a proper consideration under R.C. 3127.35(D)(2); that section is only concerned with whether the validity of the out-of-state order is in question because the order has been vacated, stayed, or modified. And, as long as the out-of-state order is not of questionable validity because it has been vacated, stayed, or modified, registration is mandated by R.C. 3127.35. *Patton* at ¶ 14. Registration and modification are separate issues that are controlled by separate sections of the UCCJEA and involve separate processes. *Hays* at ¶ 15. Peterson's jurisdictional arguments are red herrings that have absolutely no effect on whether registration is proper under R.C. 3127.35.

{¶ 35} Moreover, the trial court did not decide any jurisdictional issues or take them into consideration when deciding whether to confirm registration of the North Carolina decree. In fact, the magistrate was clear at the hearing that whether Ohio is the children's "home state"—i.e., whether Ohio has jurisdiction under the UCCJEA to modify the North Carolina decree—was not at issue, the magistrate did not address the trial court's jurisdiction in her decision, and the trial court did not address jurisdiction when it confirmed the magistrate's decision. Because the trial court has not yet reached

16.

the issue of whether it has jurisdiction to modify the North Carolina decree, and that issue does not affect whether Slayton can register the North Carolina decree, it is not properly before us on appeal. *See Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, ¶ 21, 27 (An appellate court must "limit[] its review to issues actually decided by the trial court in its judgment[,]" although it can "consider a challenge to the court's subject-matter jurisdiction for the first time on appeal * * *.").

**{¶ 36}** So, to summarize, as long as the North Carolina decree's validity was not in question because it had been vacated, stayed, or modified, Slayton was entitled to register it under R.C. 3127.35—regardless of an Ohio court's ability to modify that order. *See Hays* at ¶ 15; R.C. 3127.36(B) (An Ohio court "shall recognize and enforce, but may not modify except in accordance with [R.C. 3127.15 to 3127.24], a registered child custody determination of a court of another state."). The evidence that Peterson presented did not establish a question regarding the North Carolina decree's validity within the meaning of R.C. 3127.35(D)(2), so the trial court was required to confirm the registration of the North Carolina decree. *Patton* at ¶ 14 ("The language of R.C. 3127.35 requires the trial court to confirm the registered order if certain filing requirements are satisfied as to the registration of the foreign decree and if a person opposing registration does not establish one of the statutory bases for contesting such registration."). Therefore, the trial court correctly confirmed registration, and Peterson's assignment of error is not well-taken.

17.

## III. Conclusion

{¶ 37} Because Peterson failed to show that the validity of the North Carolina decree was in question because of the Missouri juvenile court's January 2022 orders, he failed to establish that the North Carolina decree has been modified within the meaning of R.C. 3127.35(D)(2).  Consequently, he was not entitled to prevent Slayton from registering the North Carolina decree in Ohio, and the trial court correctly confirmed the registration.  Whether the trial court can now modify the North Carolina decree is a separate issue that is not before us on appeal.

{¶ 38} Therefore, the April 13, 2023 judgment of the Sandusky County Court of Common Pleas, Domestic Relations Division, is affirmed.  Peterson is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                                      _____
                                                                                JUDGE

Christine E. Mayle, J.

                                                                     _____
Charles E. Sulek, P.J.                                              JUDGE
CONCUR.

                                                                     _____
                                                                                JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.